IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                  No. CR 23-1834 JB

ISAIAH ANTHONY ARAGON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant Isaiah Aragon's *Sealed* Sentencing Memorandum and Objections, filed March 18, 2025 (Doc. 70)("Objections"). Sentencing is scheduled for May 16, 2025. See Order On Unopposed Sealed Ex Parte Motion to Continue Sentencing Hearing [Doc. 75], filed April 7, 2025 (Doc. 79). The primary issue is whether the Court should sustain Defendant Isaiah Anthony Aragon's Objections and decrease Aragon's United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") offense level by two levels, because Plaintiff United States of America cannot prove, by a preponderance of the evidence, that Aragon is accountable for selling 9,319.40 grams of fentanyl, which includes: (i) 31,160 pills, with a net weight of 3,217.00 grams of fentanyl, seized during Aragon's arrest; and (ii) $61,0240.00 in cash found in Aragon's apartment later that day, converted to 6,102.40 grams of fentanyl at $10.00 per gram. After carefully considering the parties' arguments, the relevant materials in the record, and the applicable law, the Court overrules Aragon's Objections, because the United States has proven -- by a preponderance of the evidence, see United States v. Magallanez, 408 F.3d 672, 685 (10th Cir. 2005)(McConnell, J.) -- that most of the seized cash comes from drug sales. The applicable offense level is 31, the applicable criminal history category is II, and the Guidelines imprisonment range is 121 to 151 months.

**FACTUAL BACKGROUND**

The Court relies on the Presentence Investigation Report, filed February 27, 2025 (Doc. 66)("PSR"), for factual background. Aragon does not object to the PSR's facts. See Objections at 1-6. The Court thus concludes that those undisputed facts are the Court's findings of fact. See Fed. R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact.").

On December 6, 2023, an undercover officer with the Albuquerque Police Department arranges to purchase 30,000 fentanyl pills from Miguel Antonio Ramirez. See PSR ¶ 9, at 5. After the undercover officer contacts Ramirez, agents follow Ramirez as he drives to Aragon's residence. See PSR ¶ 9, at 5. Ramirez parks in front of Aragon's residence, which agents "believed to be a stash house where Ramirez and Aragon stored illegal narcotics." PSR ¶ 9, at 5. Ramirez contacts Aragon, and Aragon agrees to supply Ramirez with 30,000 fentanyl pills. See PSR ¶ 9, at 5. Aragon exits his residence with a tan plastic bag, walks over to Ramirez' vehicle, and sits in the front passenger seat. See PSR ¶ 10, at 5. Agents approach the vehicle and attempt to take Aragon and Ramirez into custody. See PSR ¶ 11, at 5. Agents arrest Ramirez without incident. See PSR ¶ 11, at 5. Aragon leaves the tan plastic bag in the front seat and initially flees, but is taken into custody through use of a canine. See PSR ¶ 11, at 5. Agents collect the tan plastic bag, which contains 31,160 fentanyl pills with a net weight of 3,217 grams. See PSR ¶ 11, at 5. Inside Aragon's residence, agents locate Chanel Padilla, Aragon's romantic partner, and a minor child. See PSR ¶ 12, at 5. Later that day, agents search Aragon's residence and locate: (i) $44,500.00 cash in the living room; (ii) $16,200.00 cash in a jacket pocket in the bedroom; (iii) $324.00 in Aragon's wallet; (iv) a digital scale; and (v) an electronic money counter. See PSR ¶ 12, at 5. The seized cash "was identified by the assigned agent as drug proceeds." PSR ¶ 12, at 5.

**PROCEDURAL BACKGROUND**

On February 27, 2025, the United States Probation Office ("USPO") files the PSR. See PSR at 1. The PSR asserts that Aragon is accountable for 9,3129.40 grams of fentanyl, which includes both the seized pills and the seized cash, converted to fentanyl at $10.00 per gram. See PSR ¶ 14, at 5-6. The PSR applies, pursuant to U.S.S.G. § 2D1.1(a)(5), a base offense level of 34. See PSR ¶ 20, at 6. U.S.S.G. § 2D1.1(a)(5) assigns a base offense level of 34 to drug-trafficking defendants accountable for between four and twelve kilograms of fentanyl. See U.S.S.G. §§ 2D1.1(a)(5) & (c). The PSR notes that, when he is arrested, Aragon works as a salesman at Duke City Heat in Albuquerque, New Mexico, and makes approximately $975.00 a month. See PSR ¶ 56, at 13.

On March 18, 2025, Aragon files his Objections. See Objections at 1. Aragon argues that his base offense level should be 32, because only the seized pills and not the seized cash should count towards his drug quantity. See Objections at 5-6. Aragon asserts that, without the converted cash, Aragon is accountable for only 3,217 grams of fentanyl, which warrants a base offense level of 32. See Objections at 5-6; U.S.S.G. §§ 2D1.1(c) (assigning a base offense level of 32 to drug trafficking defendants accountable for between 1.2 kilograms and 4.0 kilograms of fentanyl). Aragon argues that there is "no supporting or corroborating evidence to show that all that money came from fentanyl sales." Objections at 5. Aragon also notes that Chanel lives in the searched residence and that "she had money of her own from her job." Objections at 5. Aragon does not assert, however, that the seized cash belongs to Chanel or anyone else. See Objections at 5-6.

On March 25, 2025, the USPO files an addendum to the PSR. See Addendum to the Presentence Report at 1, filed March 25, 2025 (Doc. 71)("PSR Addendum"). The USPO stands by Aragon's base offense level calculation. See PSR Addendum at 2. The USPO argues that "it is reasonably foreseeable the U.S. currency located in the defendant's residence following his

arrest were the proceeds of drug sales and correctly converted to 6,102.40 net grams of fentanyl." PSR Addendum at 2.

On April 4, 2025, the United States responds to Aragon's Objections. See United States' Amended Sentencing Memorandum and Response to Defendant's Objection to the Presentence Investigation Report, filed April 4, 2025 (Doc. 77)("Objections Response"). The United States argues that the cash-to-drugs conversion is appropriate, because the cash likely comes from drug sales. See Objections Response at 7. The United States notes that the $60,700.00 cash found in the living room and the bedroom was divided into bundles with rubber bands. See Objections Response at 9. The United States argues: "There is no legitimate explanation on how the Defendant could have accrued such a large sum of cash when he only had a part-time job, earning $975.00 a month." Objections Response at 9. The United States also argues that the other objects found at Aragon's residence -- the money counter and digital scale -- "are items consistent with drug trafficking activities." Objections Response at 9. "Thus, the evidence shows that the money found in the Defendant's apartment is attributable to drug trafficking, and as such, the conversion from cash to drug quantity for the total offense level is appropriate." Objections Response at 9.

## LAW REGARDING OBJECTIONS TO A PRESENTENCE REPORT

Before the Court imposes a sentence, the USPO "must conduct a presentence investigation and submit a report to the court . . . ." Fed. R. Crim. P. 32(c)(1). A PSR must apply the advisory sentencing Guideline, meaning that it must:

(A)  identify all applicable guidelines and policy statements of the Sentencing Commission;

(B)  calculate the defendant's offense level and criminal history category;

(C)  state the resulting sentencing range and kinds of sentences available;

(D)  identify any factor relevant to:

(i)  the appropriate kind of sentence, or

        (ii)    the appropriate sentence within the applicable sentencing range; and

        (iii)    identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1). A presentence report also must provide additional information, including:

    (A)    the defendant's history and characteristics, including:

        (i)    any prior criminal record;

        (ii)    the defendant's financial condition; and

        (iii)    any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

    (B)    information that assesses any financial, social, psychological, and medical impact on any victim;

    (C)    when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

    (D)    when the law provides for restitution, information sufficient for a restitution order;

    (E)    if the court orders a study under 18 U.S.C. § 3552 (b), any resulting report and recommendation;

    (F)    a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

    (G)    any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 32(d)(2).

After the USPO files a PSR, the parties have an opportunity to object to the report. See Fed. R. Crim. P. 32(f). Parties must make their objections in writing within fourteen days of receiving the PSR. See Fed. R. Crim. P. 32(f)(1). Parties may object to many aspects of the PSR, "including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1). For example, a party can

object to a PSR's statement of facts. See, e.g., United States v. Garcia, No. CR 20-1370 KWR, 2022 WL 2341670 (D.N.M. June 29, 2022)(Riggs, J.)(sustaining in part and overruling in part a defendant's objections that a PSR misstates material facts regarding the posted speed limit and the circumstances surrounding the victim's injuries). If a party raises a factual objection, it must present "information to cast doubt on" the PSR's recitation of the facts. See United States v. Yates, 22 F.3d 981, 989 (10th Cir. 1994). A party also can object that the USPO miscalculates a defendant's criminal history category. See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283 (D.N.M. December 18, 2018)(Browning, J.)(addressing a defendant's objections that the Court should reduce his criminal history score by several points). Similarly, a party can object that a PSR impermissibly applies a base-offense-level enhancement, see, e.g., United States v. Casias-Grove, No. 22-0109 JB, 2022 WL 17830249 (D.N.M. December 21, 2022)(Browning, J.)(sustaining a defendant's objection that the PSR impermissibly applies a 4-level enhancement to his base-offense-level); that the PSR should have applied an additional base-offense-level enhancement, see, e.g., United States v. Talk, No. CR 19-1994 JB, 2021 WL 1978624 (D.N.M. May 18, 2021)(Browning, J.)(sustaining the United States' objection that the PSR should have applied a 4-level enhancement to the defendant's base offense level); or that the PSR should have applied a base offense level decrease, see, e.g., United States v. Pena, Nos. CR 19-3609 JB, CR 19-3611 JB, 2022 WL 16924000 (D.N.M. November 13, 2022)(Browning, J.)(sustaining the parties' objections that the PSR should have applied a 2-level reduction to the defendant's base offense level).

Ideally, the parties and the USPO can work through objections without the Court's assistance. Rule 32(f)(3) establishes: "After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate." Fed. R. Civ. P. 32(f)(3). In keeping with rule

32(f)(3), long ago in the District of New Mexico, the Court, the United States Attorney's Office, and the Federal Public Defender's Office agreed that, if there are objections, counsel first will talk to the USPO and see if they can work to address the objections independently.  If the parties and the USPO cannot work out an objection, then the parties may file an objection with the Court.  If the parties and the USPO cannot resolve an objection, rule 32(g) establishes that, "[a]t least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them."  Fed. R. Crim. P. 32(g).

If the parties and the USPO cannot resolve an objection on their own, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  When resolving factual objections, the court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence.  See United States v. Munoz-Tello, 531 F.3d 1174 (10th Cir. 2008).  Similarly, in considering objections to enhancements to a defendant's criminal history category or base offense level, the court must determine whether the United States has met its burden of showing that a particular enhancement applies by a preponderance of the evidence.[1]  See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.).  The Court may base its conclusion "on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentenc[ing] hearing."  United States v. Garcia, 2022 WL 2341670, at *2 (quoting United States v. White, 663 F.3d 1207, 1216 (11th Cir. 2011)).

---

[1]There is some nuance regarding the applicable burden of proof required for sentencing enhancements, which the Court discusses in greater detail in the next section.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court of the United States reaffirms the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481 (emphasis in original). The Supreme Court cautions, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborates on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis in original)(first citing Ring v. Arizona, 536 U.S. 584, 602 (2002); and then citing Harris v. United States, 536 U.S. 545, 563 (2002)(plurality opinion), overruled by Alleyne v. United States, 570 U.S. 99 (2012)). In United States v. Booker, however, the Supreme Court holds that, because the sentencing guideline ranges are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. at 259). See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of Apprendi's requirement." (quoting United States v. Booker, 543 U.S. at 221)(United States v. Booker adds second alteration)). More recently, the

Supreme Court holds that the Apprendi v. New Jersey requirements apply to facts that increase a defendant's mandatory minimum sentence. See Alleyne v. United States, 570 U.S. at 103.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit holds that Blakely v. Washington and United States v. Booker do not change the district court's enhancement-findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United States v. Magallanez involves plain-error review of a drug sentence in which a jury finds the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute methamphetamine. See 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributes to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on the testimony of the United States' witnesses about the various amounts that they had sold to the defendant -- attributes 1,200 grams of methamphetamine to the defendant and uses that amount to calculate his sentence under the Guidelines. See United States v. Magallanez, 408 F.3d at 682. The district court's findings increase the defendant's Guidelines sentencing range from 63 to 78 months, based on the jury's 50 grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount. See United States v. Magallanez, 408 F.3d at 682-83. On appeal, the Tenth Circuit states that, both before and after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684. Although United States v. Booker makes the Guidelines ranges "effectively advisory," United States v. Booker, 543 U.S. at 245, the Tenth Circuit reaffirms that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685.

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2]  "[T]he application of an enhancement . . . does not implicate the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.).  The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where

---

[2]Although the Tenth Circuit states in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit since characterizes its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not found yet that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is necessary to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement does not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation).  See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitles the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (concluding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributes, even though its findings increase the defendant's sentence from twenty years to consecutive forty-year terms).  Subsequent to United States v. Washington, the Tenth Circuit reiterates the position that preponderance of the evidence is the proper standard, stating: "The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence. This issue has been foreclosed in this Circuit." United States v. Robertson, 946 F.3d 1168, 1171 (10th Cir. 2020)(citing United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)).

the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314.  A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increases his or her sentence beyond the statutory maximum.  See United States v. O'Flanagan, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)[3](holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").  The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States . . . expands the rule from Apprendi v. New Jersey, . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. August 29, 2014)(Browning, J.)].

---

[3]United States v. Hendrickson, 592 F. App'x 699 (10th Cir. 2014), is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Hendrickson, United States v. Hendrickson, 592 F. App'x 699 (10th Cir. 2014), United States v. Murphy, 769 F. App'x 631 (10th Cir. 2019), United States v. Davis, 802 F. App'x 318 (10th Cir. 2020), and United States v. Callejas, 66 F. App'x 826 (10th Cir. 2003), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1315. The Supreme Court has clarified that "[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed penalty.' . . . And under our Constitution, when 'a finding of fact alters the legally prescribed punishment so as to aggravate it,' that finding must be made by a jury of the defendant's peers beyond a reasonable doubt." United States v. Haymond, 588 U.S. 634, 645 (2019)(quoting Alleyne v. United States, 570 U.S. at 112-14). Further, the Tenth Circuit has determined that a district court can use its own finding on drug quantity to enhance a defendant's Guidelines range consistent with Alleyne v. United States, "so long as the court does not use its own drug quantity finding to alter the defendant's statutory sentencing range." United States v. Cassius, 777 F.3d 1093, 1094 (10th Cir. 2015)(emphasis in original).

## ANALYSIS

The Court concludes that the PSR applies correctly a base offense level of 34, because a cash-to-drugs conversion for $60,070.00 is appropriate in Aragon's case, where the United States shows -- by a preponderance of the evidence -- that the seized cash comes from drug sales. "[I]t is settled law in the Tenth Circuit that drug proceeds can be converted to their drug-weight equivalent." United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1317. "[C]ash-to-drugs conversions [are] appropriate where a preponderance of the evidence established that the cash attributable to uncharged drug activities resulted from the 'same course of conduct' or 'common scheme or plan' as the conviction." United States v. Callejas, 66 F. App'x 826, 833 (10th Cir. 2003)(quoting United States v. Rios, 22 F.3d 1024, 1028 (10th Cir. 1994)). Large cash amounts found on premises where drug trafficking defendants sell drugs are ripe for cash-to-drugs conversion, especially when a defendant offers no credible explanation for having that much cash. See United States v. Hinson, 585 F.3d 1328, 1341 (10th Cir. 2009)(affirming cash-to-drugs conversion where police officers arresting a "long-term methamphetamine dealer who sold drugs

out of his car" find over $40,000.00 in a shoebox in the defendant's car); United States v. Callejas, 66 F. App'x at 833-34 (affirming cash-to-drugs conversion for $5,010.00 in cash bundles found in the wall of a defendant's bathroom where the defendant was flushing drugs down the toilet and lies about earning the money from a clothing resale business); United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1318 (attributing nearly $20,000.00 to drug sales, because the defendant "has advanced no alternative, licit reason for having that much cash," the cash is "discovered in a container in the same shed" as the seized drugs, and the defendant "was actively engaging in a large quantity drug transaction when he was apprehended").

Here, Aragon exits his residence with 30,000 fentanyl pills to sell to an undercover officer. See PSR ¶¶ 9-11, at 5. Later that day, agents discover $60,070.00, neatly arranged in rubber-banded bundles, inside that same residence. See PSR ¶12, at 5; Objections Response at 9. Although Aragon notes that his romantic partner, Padilla, has a job and also lives at his residence, Aragon does not assert that the seized cash is Padilla's. See Objections at 5-6. Aragon also does not explain what Padilla's job is or how she earns $60,070.00 in cash. See Objections at 5-6. For example, Aragon does not introduce pay stubs, bank withdrawals, or a sworn affidavit from Padilla or her employer to show that the cash is Padilla's legitimate income. The inference is strong: it is more likely than not that the $60,070.00 in cash bundles inside Aragon's residence are drug sales proceeds, and Aragon made that money from the same drug trafficking scheme for which he is convicted.

Although the $324.00 in Aragon's wallet also may be drug sales proceeds, the Court cannot say that the United States has shown -- by a preponderance of the evidence -- that the wallet cash should be converted. This amount is smaller and is physically separated from the rubber-banded bundles elsewhere in the residence. Aragon has a job, and it is possible that he earned the $324.00 from that job. Accordingly, the Court concludes that the wallet cash should not be converted.

Regardless, the PSR applies correctly a base offense level of 34, because, including the $60,070.00 converted at a $10.00-per-gram rate, Aragon is accountable for 9,287.00 grams of fentanyl. Accordingly, the Court overrules Aragon's Objections and concludes that Aragon's base offense level is 34.

**IT IS ORDERED** that: (i) the objection in Defendant Isaiah Aragon's *Sealed* Sentencing Memorandum and Objections, filed March 18, 2025 (Doc. 70), is overruled; (ii) the applicable offense level is 31; (iii) the applicable criminal history category is II; and (iv) the Guidelines imprisonment range is 121 to 151 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Ryan Ellison
  United States Attorney
Raquel Ruiz-Velez
Mia Rubin
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Jason Bowles
Bowles Law Firm
Albuquerque, New Mexico

    *Attorney for the Defendant*